# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-2350

_____

United States of America,         *

                              *

        Appellant,      *

                              *      Appeal from the United States

    v.                   *      District Court for the

                              *      Western District of Missouri.

Scott Johnson,            *

                              *           [PUBLISHED]

        Appellee.       *

_____

Submitted: January 14, 2011
Filed: April 5, 2011

_____

Before MURPHY, HANSEN, and MELLOY, Circuit Judges.

_____

HANSEN, Circuit Judge.

A jury found Scott Johnson guilty of eight counts of attempted sexual exploitation of children, in violation of 18 U.S.C. § 2251, after he secretly videotaped minor girls weighing themselves in the nude. Following the jury verdict, Johnson filed a motion for judgment of acquittal notwithstanding the verdict. The district court granted the motion for acquittal, finding that the videos were not lascivious because they depicted "mere nudity." The district court also conditionally denied Johnson's motion for a new trial. The Government appeals, and we reverse.

I.

Johnson was a weightlifting coach at a sports medicine clinic in Springfield, Missouri, where he coached a number of female weightlifters including young women who were ages 15 to 17. Over the course of approximately 18 months, Johnson secretly videotaped four of the female weightlifters as they weighed themselves while naked in an examination room. Two of them were minors. The evidence offered by the government showed the methodology Johnson used to obtain the secret video tapes. He had been involved in the sport of weightlifting and weightlifting competitions, both as a participant and as a coach for many years, including serving as a women's weightlifting coach at the 2004 Olympic Games. He also was a national weightlifting referee. Weightlifters compete in classes determined by body weight, and so it is common practice for both them and their coaches to keep track of the lifter's weight by frequent weighings during their training for competitive events. At the events, each participant "weighs-in" either in the nude or in underwear. The rules of the sport require that the weigh-ins be done in the presence of referees of the same gender.

On certain Saturdays (during the time periods charged in the indictment) when he was the only instructor at the weightlifting facility, Johnson moved a scale from a nearby pediatrician's office into a small examining room adjacent to the weightlifting area. He then hid a video camera on the shelf of a small table across the room from the scale, and positioned it so that it would capture on videotape the actions of the young women as they weighed themselves. One of the videos in evidence actually shows Johnson's face as he adjusts and positions the camera. Johnson then directed the young women to go into the examination room, strip down completely, and check their weight. One such direction from Johnson is heard on one of the tapes. On at least one occasion after a lifter had come out from the examination room, he pointedly asked the young woman (age 15-16) if she had stripped down completely.

The level of the zoom feature of the camera, and the position of the scale within the room changes from video to video. In some videos, the scale is positioned at right angles to the camera so that principally a side view of the person while she is on the scale is seen, although as the female turns and goes through the motions to remove all of her clothing, gets on and off the scale, and puts her clothing back on, both frontal and backside views of her nakedness appear. In others, the scale is positioned so that the female faces away from the camera as she weighs in, and yet in others she faces the camera directly while standing naked on the scale.

On October 28, 2008, one of Johnson's coworkers found the video camera in a shared work space. He viewed the videotape still in the camera and saw a recording of a young woman disrobing and weighing herself, and he called his supervisors. One of the supervisors met with Johnson, who confessed that he was responsible for the recording and apologized.

The next day, the clinic called the police to notify them of the videotape. Johnson met with three detectives from the Springfield Police Department at his home. In a tape-recorded interview played for the jury, he admitted that he filmed the victims without their knowledge because he "just wanted to film them" and "wanted to see them naked." (Oct. 29, 2008 Interview Tr. at 2.) He said that he thought they were "cute" and that he was curious about what they looked like naked. (Id. at 3.) During the interview, he admitted that "my pervertedness got the best of me." (Id. at 5.) He initially told the police that there was only the one videotape found in the camera, although after the police found two other partially destroyed videotapes in his trash, he admitted that he had been filming the young women for some time. Ultimately, he revealed that he had videotaped at least four female athletes.

Eight video clips of two juvenile victims were shown to the jury. Many of these video clips showed the young women standing on the scale, and their nude bodies from about their shoulders to below their knees clearly appear. Their faces appear on

screen only when they bend or stoop over to remove or put back on items of clothing. Other clips are more tightly focused, and in one of the clips, the camera's focus has been so "zoomed in" that the left half of the female's body from her left buttock down to her knee fills half of the screen. Had the female been facing the camera instead of away from it, a reasonable jury could have drawn a fair inference that the camera would have recorded a close-up view of her naked pubic area. Some of the clips clearly reveal the pubic areas of the young women not only as they stand on the scale facing the camera, but also as they go through the motions required to remove all of their clothing and put it back on.

On January 20, 2009, a federal grand jury indicted Johnson with ten counts[1] of sexual exploitation of children, in violation of 18 U.S.C. § 2251. Section 2251 makes it a crime to "employ[], use[], persuade[], induce[], entice[], or coerce[] any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct." For the purposes of § 2251, "sexually explicit conduct" is defined as "actual or simulated . . . lascivious exhibition of the genitals or pubic area of any person." 18 U.S.C. § 2256(2)(A)(v).

On February 16, Johnson filed a motion to dismiss the indictment, arguing the images did not depict sexually explicit conduct as defined by federal law. The district court denied Johnson's motion. On September 8, Johnson filed a motion to exclude the videos as evidence at trial, making the same arguments. The district court denied his motion. A jury trial was held in December 2009. After the Government presented its case-in-chief and at the close of all evidence, Johnson made motions for acquittal. The district court denied the motion made at the close of the government's case-in-chief. With respect to the motion made after all the evidence was in, the court ruled that it would submit the case on an attempt basis as opposed to a completed offense

---

[1]The Government eventually dismissed two of the counts because it was unclear whether the victim in two of the video clips was 17 or 18 at the time she was filmed.

-4-

basis, and it fashioned its jury instructions accordingly. Neither party objected to the court's instructions. The jury found Johnson guilty of all eight counts.

Following the jury verdicts of guilty, Johnson asked for time to file a written motion for judgment of acquittal notwithstanding the verdict. The district court indicated that if it were to rule presently, it would deny the motion but granted time for a written motion to be filed and for briefing by both sides. The district court then granted Johnson's written motion for acquittal, concluding that Johnson was guilty of video voyeurism (an offense not charged in this case due to jurisdictional limitations), "not an attempted persuasion of these minors to engage in sexually explicit conduct so it could be captured on video." (J.A. at 129, June 15, 2010 Amended Order at 17.) The district court found that the images were not lascivious and only depicted mere nudity, such that there was insufficient evidence to support the verdicts. The Government appeals.

## II.

In reviewing a district court's grant of a motion for a judgment of acquittal, "this court reviews 'the sufficiency of the evidence *de novo*, viewing evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict.'" United States v. Boesen, 541 F.3d 838, 852-53 (8th Cir. 2008) (quoting United States v. Santana, 524 F.3d 851, 853 (8th Cir. 2008)). "'The standard of review is very strict, and we will reverse a conviction only if we conclude that no reasonable jury could have found the accused guilty beyond a reasonable doubt.'" Id. at 853 (quoting United States v. Garcia, 521 F.3d 898, 901 (8th Cir. 2008)).

The indictment charged in each count that the defendant "did and attempted to employ, use, persuade, induce, entice, and coerce a minor, [initials of the female], to engage in sexually explicit conduct for the purpose of producing a visual depiction of

such conduct . . . in violation of Title 18, United States Code, Sections 2251(a) and (e)."  (Rec. at 18-21.)

Section 2251(a) provides in pertinent part that:

> Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct shall be punished as provided under subsection (e). . . .

Subsection (e) provides in pertinent part that:

> Any individual who violates, or attempts or conspires to violate, this section shall be fined under this title and imprisoned not less than 15 years. . . .

Any plain reading of subsection (e) shows that it is a violation of § 2251 to attempt to commit the crime defined in subsection (a) of § 2251.  See United States v. Raney, 342 F.3d 551 (7th Cir. 2003).

With respect to each of the eight counts submitted to the jury, each count's specific instruction recited as a required element (to be proved beyond a reasonable doubt) "that the defendant attempted to use, persuade, induce, entice, or coerce the minor [initials of the female] to engage in sexually explicit conduct as defined in Instruction 26."  (Doc. 84 at 19-26.)

"Sexually explicit conduct" was separately defined for the jury using the statutory definition found in 18 U.S.C. § 2256 (2)(A)(v) as "the lascivious exhibition of the genitals or pubic area of any person."  (Doc. 84 at 29, Instr. 26).  Images or exhibitions of female breasts and the buttocks of either gender are not within the purview of § 2251(a).  See United States v. Gleich, 397 F.3d 608, 614 (8th Cir. 2005).

The district court also included a specific instruction on attempt which informed the jury that:

> A person may be found guilty of an attempt if he intended to use, persuade, induce, entice, or coerce the minor to take part in sexually explicit conduct for the purpose of producing a visual depiction and voluntarily and intentionally carried out some act which was a substantial step toward that production.

(Doc. 84 at 27.) The district court also defined what constituted a "substantial step." As previously noted, no party objected to the court's instructions.

Much of the argument in the briefs is devoted to whether or not the videos produced by Johnson's efforts are actually, in fact, lascivious exhibitions of the minors' genitalia or pubic areas. Indeed the district court, as noted earlier, determined that "some of the videos did not depict either [genitals or pubic area]" and concluded that Johnson had failed to actually produce a visual depiction of a lascivious exhibition of the minors' genitals or pubic area. Convinced that the videos captured only "mere nudity" and that there was insufficient evidence that Johnson had "attempted to persuade the minors to engage in a lascivious exhibition of their genitals or pubic area so he could produce a video depiction of such conduct" (J.A. at 122, Amended Order at 10), as opposed to his attempting to persuade them to be "merely nude," the district court granted the written posttrial motion for acquittal.

We believe that the district court's and the briefs' emphasis on whether or not the videotapes themselves are actually lascivious is somewhat misplaced. The case was submitted to the jury only on an attempt theory. "[A] defendant's success in attaining his criminal objective is not necessary for an attempt conviction." United States v. Bauer, 626 F.3d 1004, 1007 (8th Cir. 2010). The attorneys' arguments focused on what the defendant intended when he arranged the scale and camera so as

to record the females as they went through the physical motions of "strip[ping] down completely" pursuant to his instructions and weighing themselves while naked within his secret camera's range. Did he attempt to "use" or "induce" (in the language of § 2251(a)) the minor females to take part unwittingly and unknowingly in a lascivious exhibition of their genitals or pubic areas, or was he just trying to produce a visual depiction of their naked forms, their "mere nudity," without intending to elicit a sexual response in the viewer, because he found them "cute"?

In cases involving the completed crime defined in § 2251, as opposed to an attempt to violate the statute, we have previously explained that "more than mere nudity is required before an image can qualify as 'lascivious' within the meaning of the statute." United States v. Kemmerling, 285 F.3d 644, 645-46 (8th Cir.), cert. denied, 537 U.S. 860 (2002). We have not previously defined "mere nudity," although other courts have suggested examples of what could constitute mere nudity. For example, in Kemmerling, we distinguished images of the genitalia of young males which we labeled as "lascivious" from those that could be classified as depicting mere nudity. "These [lascivious] images were not designed, for instance, simply to provide a clinical view of the portions of the children's anatomy that are pictured." Id. at 646. The Third Circuit, in explaining the concept of "mere nudity," stated that "[n]o one seriously could think that a Renoir painting of a nude woman or an innocuous family snapshot of a naked child in the bathtub violates the child pornography laws." United States v. Knox, 32 F.3d 733, 750 (3d Cir. 1994), cert. denied, 513 U.S. 1109 (1995).[2] A reasonable jury could conclude that these videos of teenage minor females

---

[2]Most recently, the Fifth Circuit concluded that a surreptitious filming of a nude tanner, taken when the defendant held a video camera over the adjoining wall of a tanning booth room, did "not meet the standard for producing child pornography" where the tanner's pubic region was visible in the video for a brief second on the far side of the video's frame. See United States v. Steen, No. 10-50114, 2011 WL 667977, at *3 (5th Cir. Feb. 25, 2011). Notably, the defendant was charged with the completed crime, not attempt.

disrobing and weighing themselves in the nude cannot reasonably be compared to innocent family photos, clinical depictions, or works of art.

In determining whether images are "lascivious," we have referred to the criteria listed in United States v. Dost, 636 F. Supp. 828, 832 (S.D. Cal. 1986), aff'd sub nom., United States v. Wiegand, 812 F.2d 1239 (9th Cir.), cert. denied, 484 U.S. 856 (1987). The factors in Dost included: (1) whether the focal point of the picture is on the minor's genitals or pubic area; (2) whether the setting of the picture is sexually suggestive; (3) whether the minor is depicted in unnatural poses or inappropriate attire considering the minor's age; (4) whether the minor is fully or partially clothed or is nude; (5) whether the picture suggests sexual coyness or a willingness to engage in sexual activity; and (6) whether the image is intended to elicit a sexual response in the viewer. Id.; see also United States v. Horn, 187 F.3d 781, 789 (8th Cir. 1999) (citing the Dost criteria), cert. denied, 529 U.S. 1029 (2000). However, while we consider these criteria, they are "neither definitive nor exhaustive." Horn, 187 F.3d at 789. "'All six Dost factors need not be present in order to bring the depiction under the proscription of the statute.'" United States v. Wallenfang, 568 F.3d 649, 657 (quoting United States v. Wolf, 890 F.2d 241, 245 (10th Cir. 1989)) (alterations omitted). Instruction 26 listed the Dost factors and told the jury they were to decide the weight or lack of weight to be given to any of the factors and that they could consider them in determining Mr. Johnson's intent. It also included the additional factor of "whether the picture portrays the minor as a sexual object."

In Kemmerling, we stated that "[a] picture is 'lascivious' only if it is sexual in nature. Thus, the statute is violated, for instance, when a picture shows a child nude or partially clothed, when the focus of the image is the child's genitals or pubic area, and when the image is intended to elicit a sexual response in the viewer." Kemmerling, 285 F.3d at 646. A reasonable jury could find from the evidence that Johnson adjusted the zoom feature in an attempt to tighten the focus of the camera on the area where the females' genitals would be if they were to face the camera, and

-9-

thereby determine that the first Dost factor was satisfied. One of the resulting videos captured a close up of the minor's left buttock, and it would clearly have met the first Dost factor if the minor would have merely turned around. When the evidence is viewed in the light most favorable to the verdicts, the fourth factor is satisfied by the fact that the minor females appear both totally nude and partially clothed as they face the camera. A reasonable jury could also have concluded that because the video clips show the females generally from their shoulders to their calves, including their naked breasts in the frontal views, that Johnson attempted to obtain images portraying them as sexual objects and that their facial features were apparently of little or no importance. See, e.g., United States v. Brown, 579 F.3d 672, 684-85 (6th Cir. 2009). Consequently, a reasonable jury applying the Dost factors could have determined that the secretly recorded videos were intended by the defendant to capture a lascivious exhibition of the genitals or pubic area of the young women and were intended to elicit a sexual response in the viewer.

The fact that the young women in the videos were not acting in an obviously sexual manner, suggesting coyness or a willingness to engage in sexual activity, does not necessarily indicate that the videos themselves were not or were not intended to be lascivious. In Horn, we explained that "'lascivious exhibition'" need not necessarily be "the work of the child, whose innocence is not in question, but of the producer or editor of the video." Horn, 187 F.3d at 790. Thus, even images of children acting innocently can be considered lascivious if they are intended to be sexual. We further made clear that the fact that three of the Dost factors—a sexually suggestive setting, inappropriate attire or unnatural poses, and a suggestion of sexual coyness—were not relevant to that case did not prevent the images from being lascivious. Id. In this instance, a reasonable jury could find the video clips were intended to be lascivious. The camera was specifically pointed at the scale, where the young women were certain to be standing nude (at the direction of Johnson), and the camera angle was such that in many of the video clips, when the minors were on the scale, the frame encompassed their nude bodies from their shoulders to below their knees.

Furthermore, statements made by the producer about the images are relevant in determining whether the images were intended to elicit a sexual response in the viewer. See Brown, 579 F.3d at 683-84. Johnson said during his interview with the police that he filmed the young women because he was curious as to what they looked like nude and that his "pervertedness got the best of [him]." (Interview Tr. at 5.) A reasonable jury could draw a reasonable inference that Johnson intended the videos to be sexual in nature and to elicit a sexual response in the viewer. See Kemmerling, 285 F.3d at 646 (concluding that the purpose of the pictures "appear[ed] to be to elicit a sexual response from the viewer. These images were not designed, for instance, to provide a clinical view of the portions of the children's anatomy that are pictured."). The jury was carefully instructed that it was not to decide "whether the pictures appealed, or were intended to appeal, to the defendant's sexual interests, only whether they appear to be of a sexual character." (Doc. 84 at 29, Instr. 26.)

Viewing the evidence in the light most favorable to the jury verdict, we conclude that the Government offered sufficient evidence such that a reasonable jury could (and did) find that Johnson attempted to use the minors to engage in sexually explicit conduct for the purpose of producing a visual depiction of that conduct. Therefore, the district court erred in holding that there was insufficient evidence to support the guilty verdicts, and it subsequently erred in granting Johnson's motion for a judgment of acquittal notwithstanding the jury verdict. See Boesen, 541 F.3d at 852-53.

Near the end of his brief, Johnson argues that he is entitled to a new trial based on two instances of alleged prosecutorial misconduct. Johnson's written motion in the district court was entitled, "Motion for Acquittal Notwithstanding the Verdict and/or Motion for a New Trial With Suggestions In Support Thereof." Some of his suggestions only supported the Motion for Judgment of Acquittal; others only supported the Motion for a New Trial. A review of his motion reveals that he did raise these same new trial issues in the district court. The district court, pursuant to

Federal Rule of Criminal Procedure 29(d), conditionally denied the motion for a new trial.

Rule 29(d)(3)(B) provides:

> If the court conditionally denies a motion for a new trial, an appellee may assert that the denial was erroneous. If the appellate court later reverses the judgment of acquittal, the trial court must proceed as the appellate court directs.

The government contends that because Johnson took no cross-appeal, this court is unable to consider the district court's conditional denial of Johnson's new trial motion. While the correctness of a conditional denial of a new trial is often brought to an appellate court's attention by the filing of a formal cross-appeal, neither party has cited a case holding that such a cross-appeal is mandatory or jurisdictional, and our own research has failed to disclose a case so interpreting Rule 29(d).

Federal Rule of Civil Procedure 50(c)(2) has very similar language. In pertinent part, it says:

> If the motion for a new trial is conditionally denied, the appellee may assert error in that denial; if the judgment is reversed the case must proceed as the appellate court orders.

In the Notes concerning the 1963 amendments to Rule 50(c), the Committee explained:

> The party in whose favor judgment n.o.v. was entered below may, as appellee, besides seeking to uphold that judgment, also urge on the appellate court that the trial court committed error in conditionally denying the new

-12-

> trial. <u>The appellee may assert this error in his brief, without taking a cross-appeal.</u>

Fed. R. Civ. P. 50(c) advisory committee notes (emphasis added). We have relied on these committee notes to address the denial of a motion for new trial despite the lack of a cross-appeal in a civil case. <u>See</u> <u>Clements v. Gen. Accident Ins. Co. of Am.</u>, 821 F.2d 489, 490 n.1 (8th Cir. 1987). Perceiving no reason why the result should be different under the Rules of Criminal Procedure, we proceed to consider Johnson's argument that the district court erred when it conditionally denied his motion for a new trial, even though Johnson did not list the matter in his appellee's brief's statement of issues.

We review the district court's decision to deny Johnson's motion for a new trial for abuse of discretion. <u>United States v. Barrera</u>, 628 F.2d 1004, 1007 (8th Cir. 2011). "We will reverse for prosecutorial misconduct only if the conduct, even if improper, so prejudiced [the defendant] that he was unable to obtain a fair trial." <u>Carlson v. Minnesota</u>, 945 F.2d 1026, 1029 (8th Cir. 1991). "The district court also has 'broad discretion in controlling closing arguments, and this court will not reverse absent an abuse of discretion.'" <u>Barrera</u>, 628 F.3d at 1007 (quoting <u>United States v. Beckman</u>, 222 F.3d 512, 526 (8th Cir. 2000)).

We have carefully reviewed the record with respect to each of the alleged incidents of misconduct. Our review of the first one reveals that no objection was made to the prosecutor's statement, and so we are limited to a plain error review. <u>United States v. McMurray</u>, 20 F.3d 831, 834 (8th Cir. 1994). "If an arguably improper statement made during closing argument is not objected to by defense counsel, this court will only reverse under exceptional circumstances." <u>United States v. Nabors</u>, 761 F.2d 465, 470 (8th Cir.), <u>cert.</u> <u>denied</u>, 474 U.S. 851 (1985). We see no plain error, and note that no request was made by the defense for the curative instruction it now says the court should have given <u>sua</u> <u>sponte</u>. Because the court's final instructions on the use of the <u>Dost</u> factors by the jury was correct, we conclude

that any alleged error in counsel's arguments to the jury about those factors was effectively cured, and any potential misunderstanding the jury may have had resulting from counsel's argument was dispelled. We also note that defendant's counsel was permitted to respond to the prosecutor's assertion, and did so most emphatically.

The second alleged incident fares no better because the prosecutor did little more than paraphrase the court's instruction that the jury had to decide whether the videos were intended or designed to elicit a sexual response in the viewer. The court also specifically instructed the jury that it was not to decide whether the pictures appealed or were intended to appeal to the defendant's sexual interest, only whether the videos appear to be of a sexual character.

We conclude that the district court did not abuse its broad discretion in controlling the final arguments, and accordingly it did not commit any error in denying Johnson's motion for a new trial.

III.

Accordingly, the judgment of the district court is reversed, and we remand for reinstatement of the jury's verdicts and for any necessary further proceedings.

_____