# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-2458

_____

United States of America,

      Plaintiff - Appellee,

v.

Terry Lee Ward,

      Defendant - Appellant.

\* \* \* \* \* \* \* \* \* \* \*

Appeal from the United States
District Court for the
Eastern District of Arkansas.

_____

Submitted: April 19, 2012
Filed: July 23, 2012

_____

Before LOKEN and SHEPHERD, Circuit Judges, and GERRARD,[*] District Judge.

_____

LOKEN, Circuit Judge.

A warrant search of Terry Lee Ward's recreational vehicle and his computer yielded a video of Ward positioning W.D., a twelve-year-old girl, while he secretly filmed the front of her nude body, and CDs containing thousands of images of child pornography. After Ward was convicted in Arkansas state court of raping W.D.'s eleven-year-old sister, federal prosecutors charged him with single counts of sexual exploitation of a minor, W.D., and possession of child pornography. See 18 U.S.C. §§ 2251(a) and 2252(a)(4)(B). A jury convicted him of both counts, but we reversed

_____

[*]The Honorable John M. Gerrard, United States District Judge for the District of Nebraska, sitting by designation.

after concluding he was denied his Sixth Amendment right to be present at trial. United States v. Ward, 598 F.3d 1054, 1060 (8th Cir. 2010). On remand, a jury again convicted Ward of both counts. The district court[2] imposed concurrent sentences of 360 and 120 months in prison, the statutory maximum on each count, consecutive to the unserved portion of his state court sentence of life without parole. Ward appeals his conviction for sexual exploitation of a minor, arguing the evidence was insufficient because the video was not a visual depiction of sexually explicit conduct. He also appeals his sentence, arguing it is unreasonably long and should not be consecutive to the undischarged portion of his state sentence. We affirm.

## I. Sufficiency of the Evidence

Ward argues the district court erred in denying his motion for judgment of acquittal on the sexual exploitation charge. As relevant here, the statute prohibits employing, using, persuading, or coercing a minor to engage in "sexually explicit conduct for the purpose of producing any visual depiction of such conduct" using materials shipped in interstate commerce. 18 U.S.C. § 2251(a). In this case, the conviction turned on whether, in secretly filming W.D. nude before and after she took a shower, Ward used or persuaded the young girl to take part in producing a visual depiction of sexually explicit conduct. "Sexually explicit conduct" is defined as including the "lascivious exhibition of the genitals or pubic area of any person." 18 U.S.C. § 2256(2)(A)(v). In deciding this issue, the district court instructed the jury to consider non-exclusive factors commonly referred to as the "Dost factors":

> Whether a visual depiction of the genitals or pubic area constitutes a lascivious exhibition requires a consideration of the overall content of the material. You may consider such factors as: (1) whether the focal point of the picture is on the minor's genitals or pubic area; (2) whether

[2]The Honorable Billy Roy Wilson, United States District Judge for the Eastern District of Arkansas.

the setting of the picture is sexually suggestive, that is, in a place or pose generally associated with sexual activity; (3) whether the minor is depicted in an unnatural pose or in inappropriate attire, considering the age of the minor; (4) whether the minor is fully or partially clothed, or nude; (5) whether the picture suggests sexual coyness or a willingness to engage in sexual activity; (6) whether the picture is intended or designed to elicit a sexual response in the viewer; (7) whether the picture portrays the minor as a sexual object; and (8) the caption(s) on the picture(s). It is for you to decide the weight or lack of weight to be given to any of these factors. A picture need not involve all of the factors to constitute a lascivious exhibition of the genitals or pubic area.

See United States v. Dost, 636 F. Supp. 828, 832 (S.D. Cal. 1986), aff'd sub nom. United States v. Wiegand, 812 F.2d 1239 (9th Cir.), cert. denied, 484 U.S. 856 (1987). We and other circuits have approved use of these factors. See, e.g., United States v. Wallenfang, 568 F.3d 649, 657 (8th Cir. 2009); United States v. Rivera, 546 F.3d 245, 253 (2d Cir. 2008) ("the Dost factors impose useful discipline on the jury's deliberations"). They have been incorporated into Eighth Circuit Model Criminal Jury Instruction 6.18.2251(a).

As counsel for Ward conceded at oral argument, when the phrase "lascivious exhibition of the genitals or pubic area" has been properly defined for the jury, "the question whether the materials depict lascivious exhibition of the genitals, an element of the crime, is for the finder of fact." United States v. Rayl, 270 F.3d 709, 714-15 (8th Cir. 2001) (quotation omitted); accord United States v. Frabizio, 459 F.3d 80, 85 (1st Cir. 2006) ("lascivious" is a "commonsensical term"). Thus, as we explained in upholding a child sexual exploitation verdict in United States v. Johnson, 639 F.3d 433, 437-38 (8th Cir. 2011), our standard of review is exceedingly deferential:

In reviewing a district court's grant of a motion for a judgment of acquittal, this court reviews the sufficiency of the evidence *de novo*, viewing evidence in the light most favorable to the government,

resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict. The standard of review is very strict, and we will reverse a conviction only if we conclude that no reasonable jury could have found the accused guilty beyond a reasonable doubt. (Quotations and citations omitted.)

Summarizing the evidence at trial most favorably to the jury's verdict, investigators discovered the video inside a locked safe in Ward's vehicle, where they also found his expansive collection of child pornography. The video was admitted at trial and is part of the record on appeal. To film the video, Ward positioned a camera under a table at one end of his RV focused on the hallway, with bunk beds visible to the right and the entrance to a shower on the left. Viewers see Ward move a floor fan obstructing the camera's view and hear him tell one child to stay behind a sheet covering the bottom bunk. Ward then retrieves W.D. from the top bunk and helps her undress in the hallway, get into and out of the shower, dry, and dress. Throughout, Ward positions W.D. himself or directs her to orient herself so that the camera repeatedly captures the front of her nude body.

W.D., now nineteen, testified at trial that she knew Ward through an old friend and visited his RV on three weekends in August 2004, where she and other children watched movies and sat on bunk beds playing video games. She recalled taking the shower. She said she did not know Ward was filming her and did not see the film until after its seizure. She testified, "I was going to take a shower and he just started following me there, pretty much, and turning me around. I didn't know why, but I went to get in the shower." When the prosecutor asked W.D. who decided what direction she would face in the hallway, she answered, "He was moving me like in what directions he wanted me to go." Asked if anything else happened after the video was taken, W.D. answered, "he tried to kiss me and that's it." Defense counsel asked W.D. two questions on cross-examination:

Defense counsel: "it looks like he didn't try to touch you inappropriately or anything like that on the video?"

W.D.: "Well, the way he was turning me around."

Defense counsel: "He turned you around, but it didn't appear that he was touching you inappropriately or anything like that; is that correct?"

W.D.: "Touching my sides is not appropriate."

On appeal, Ward argues the evidence was insufficient as a matter of law because the video depicts "mere nudity" that does not satisfy the element of lasciviousness. As the plain language of § 2256(2)(A)(v) makes clear, "there must be an 'exhibition' of the genital area and this exhibition must be 'lascivious.'" United States v. Horn, 187 F.3d 781, 789 (8th Cir. 1999). Ward is correct "that more than mere nudity is required before an image can qualify as lascivious within the meaning of the statute." Johnson, 639 F.3d at 439, quoting United States v. Kemmerling, 285 F.3d 644, 645-46 (8th Cir.), cert. denied, 537 U.S. 860 (2002). Emphasizing certain of the Dost factors, Ward argues the video depicted W.D.'s "entire body, without a focal point on the child's genitalia or pubic area," neither the setting nor the pose was "generally associated with sexual activity," and "the depiction does not suggest sexual coyness or a willingness to engage in sexual activity."

We acknowledge this is a factually close case because a video of a twelve-year-old child undressing to take a shower, unaware she is being secretly filmed by a pedophile, is unlike the images of overt sexual activity typically encountered in prosecutions involving commercial child pornography. But the focus of § 2251(a) is the sexual exploitation of children. W.D. was exploited, and her response to defense counsel's cross examination made clear to the jury that she considered it sexual exploitation: "Touching my sides is not appropriate." The critical question is, did Ward's video depict a lascivious exhibition? "The 'lascivious exhibition' is

not the work of the child, whose innocence is not in question, but of the producer or editor of the video." Horn, 187 F.3d 790; see Johnson, 639 F.3d at 440 ("even images of children acting innocently can be considered lascivious if they are intended to be sexual"); Wiegand, 812 F.2d at 1244.

We conclude a reasonable jury could find that the exploitation of W.D. included using her to engage in sexually explicit conduct. Although the video may look to many viewers like a series of sexually unfocused pictures of a nude youngster, Ward positioned W.D., using verbal commands and touching her body, so that the secret camera repeatedly filmed her pubic area. "When a photographer selects and positions his subjects, it is quite a different matter from the peeking of a voyeur upon an unaware subject pursuing activities unrelated to sex." United States v. Steen, 634 F.3d 822, 828 (5th Cir. 2011). Ward's manipulation of W.D. to film her pubic area told the jury he viewed the child as a sexual object. Then, after secretly filming her before and after she took a shower, Ward tried to kiss her. In weighing this evidence, the jury could reasonably consider extrinsic evidence, such as Ward's extensive child pornography collection, to determine "whether the images were intended to elicit a sexual response in the viewer." Johnson, 639 F.3d at 441. As in Rivera, 546 F.3d at 250, "A reasonable jury could therefore find that [Ward] composed the images in order to elicit a sexual response in a viewer -- himself." Compare Horn, 187 F.3d at 789-90 (videotapes at beach and jungle gym with freeze framing of children's genitals); United States v. Larkin, 629 F.3d 177, 183-84 (3d Cir. 2010).

After viewing the video, we conclude the jury reasonably found that the images Ward produced satisfied the statutory standard -- visual depictions of sexually explicit conduct. The jury could reasonably reject Ward's "mere nudity" defense because his manipulation of the naked W.D. so as to secretly film her genitals "cannot reasonably be compared to innocent family photos, clinical depictions, or works of art." Johnson, 639 F.3d at 439.

## II. Sentencing Issues

The district court determined Ward's advisory guidelines range, as limited by the statutory maximum sentences for the two offenses, to be 360 to 480 months in prison. The government urged a sentence within the advisory range, emphasizing Ward's history of sexually exploiting children. Defense counsel, noting Ward's age of fifty-nine-years, his already-lengthy state confinement in permanent administrative segregation for raping W.D.'s young sister, and his vulnerability to abuse while in prison, argued that 180 months would be sufficient but not greater than necessary. Because Ward's state offense was not relevant conduct that increased his advisory guidelines offense level, the district court had discretion to impose a consecutive, concurrent, or partially concurrent sentence "to achieve a reasonable punishment for the instant offense." U.S.S.G. § 5G1.3(c). The court imposed a guidelines range sentence consecutive to the undischarged term of Ward's state sentence.

On appeal, Ward argues the court abused its discretion by inadequately weighing the mitigating factors, denying a downward variance, and imposing a substantively unreasonable consecutive sentence. "When prison terms for multiple offenses are imposed at different times, the governing statute encourages consecutive sentencing." United States v. Atteberry, 447 F.3d 562, 564 (8th Cir. 2006), citing 18 U.S.C. § 3584(a). Here, after considering Ward's detailed Sentencing Memorandum and conducting a sentencing hearing at which Ward vigorously argued the mitigating factors urged on appeal, the district court imposed a consecutive guidelines range sentence. The court did not exceed its "wide latitude to weigh the [18 U.S.C.] § 3553(a) factors in each case and assign some factors greater weight than others in determining an appropriate sentence." United States v. Elodio-Benitez, 672 F.3d 584, 586 (8th Cir. 2012) (quotation omitted). The consecutive sentence is harsh. But so were Ward's crimes against young children.

The judgment of the district court is affirmed. Ward has filed numerous *pro se* motions seeking more time to prepare *pro se* filings, complaining of procedural unfairness in the district court and defense counsel's conduct on appeal, arguing that only the State of Indiana "has legal jurisdiction of Terry Lee Ward," and complaining of mistreatment in the Arkansas prison where he is serving his state sentence. We deny each of these motions because they are without merit in this direct appeal.

_____