[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No.  17-10973

_____

D.C. Docket No. 6:16-cr-00129-CEM-KRS-1

UNITED STATES OF AMERICA,

                                                    Plaintiff - Appellee,

versus

JERRY HALL,

                                                    Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(June 27, 2019)

Before: ED CARNES, Chief Judge, JULIE CARNES, and CLEVENGER,* Circuit
Judges.

PER CURIAM:

---

* Honorable Raymond C. Clevenger, III, United States Circuit Judge for the Federal Circuit,
sitting by designation.

Jerry Hall appeals his 360-month sentence, which was imposed after he pled guilty to one count of production of child pornography, in violation of 18 U.S.C. § 2251(a) and (e).  Hall argues that the district court erred because the photographs and video found on his cellphone of his seven-year-old step-granddaughter could not support the five-level enhancement applied to his base offense level under United States Sentencing Guidelines ("the Guidelines") § 4B1.5(b)(1).  Because we hold that the district court's factual findings are not clearly erroneous, we affirm.

I

A

Hall was investigated in June 2015 for his use of peer-to-peer sharing software to download child pornography.  The Florida Department of Law Enforcement executed a search warrant and recovered Hall's computers, cellphone, and memory cards, which revealed over one hundred pornographic photographs and videos of children.  One memory card revealed eight photographs Hall created in June 2014 of his eight-year-old step-granddaughter, K.S.  Five of those photographs showed K.S. with her underwear to the side or completely pulled down her legs.  They also focused on K.S.'s exposed genitalia and pubic area.  Based on those photographs, Hall was charged with production of child pornography.

The Florida Department of Law Enforcement also found photographs and a video of Hall's seven-year-old step-granddaughter, A.S.  Hall used his cellphone to

2

take those photographs and create the video in July 2015.  The video lasted for sixty-two seconds and initially depicted A.S. climbing onto and then sitting on a bar stool while wearing a two-piece swimsuit.  Approximately forty seconds into the recording, the video focused in on A.S.'s pubic area, which was covered by her swimsuit bottoms, and remained focused there for twelve seconds, approximately twenty-percent of the whole video.  There were four photographs of A.S.  In the first photograph, A.S. was about to sit down on a bar stool in her two-piece swimsuit, and the photograph focused exclusively on her buttocks.  In the second photograph, the camera looked down onto A.S.'s chest.  In the third and fourth photographs, she was sitting on a couch in her two-piece swimsuit with her feet together, legs bent at the knee and spread wide apart.  A side portion of A.S.'s bare pubic area was visible under her loose-fitting swimsuit bottoms in the third and fourth photographs.  The investigators also found on the same cellphone that held the photographs and video of A.S. several website URLs that contained seven distinct phrases or words relating to incest and child pornography.

B

Hall was indicted on one count of production of child pornography, in violation of 18 U.S.C. § 2251(a) and (e) ("Count 1"), and one count of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(5)(B) and (b)(2) ("Count 2").

3

Hall subsequently signed a plea agreement where he agreed to plead guilty to Count 1 of the indictment and the Government agreed to drop Count 2.

Hall's pre-sentence investigation report ("PSR") assigned a base offense level of thirty-two, pursuant to § 2G2.1(a) of the Guidelines. That level was increased by four under § 2G2.1(b)(1) of the Guidelines because the offense involved a minor who had not yet attained the age of 12 years. There were also two, two-level enhancements because the offense involved the commission of a sexual act or sexual contact under § 2G2.1(b)(2)(A) of the Guidelines, and because, under § 2G2.1(b)(5), the minor was related to the defendant or under his care or supervisory control at the time of the offense.

Hall also received a five-level enhancement under § 4B1.5(b)(1) of the Guidelines—the subject of the current appeal—because the Probation Office found that Hall engaged in a pattern of activity involving prohibited sexual activity with a minor on two separate occasions. Hall also received a three-level reduction for acceptance of responsibility under § 3E1.1(a) of the Guidelines, yielding a total offense level of 42.

Because the PSR assigned no criminal-history points, a total offense level of 42 and a criminal history category of I resulted in a Guideline range of 360 months to life imprisonment. Under 18 U.S.C. §§ 2251(a) and (e), the statutory maximum for production of child pornography is thirty years' imprisonment per count. Hall

was therefore assigned a Guideline range of 360 months because the statutorily authorized maximum sentence was less than the maximum life sentence under the Guidelines.

At sentencing, Hall argued that the photographs and video of A.S. could not support the five-level enhancement because they were not a lascivious exhibition of A.S.'s genital or pubic area, and they were part of the same conduct that resulted in the instant offense. The Government responded that the photographs and video were not part of the same conduct that gave rise to Count 1 because the video and photographs of A.S. were created on July 27, 2015, whereas the offense conduct in Count 1 occurred in June 2014.

The district court overruled Hall's objection and found that his July 2015 conduct met the statutory definition of production of child pornography because the photographs of A.S. on the couch depicted the pubic area of a minor and the swimsuit bottom was loose enough that a portion of A.S.'s bare pubic area could actually be seen. The court also stated it was "confident" that the video demonstrated a lascivious exhibition of A.S.'s pubic area because it zoomed in on that area. The district court overruled Hall's second objection because the evidence used to support the five-level enhancement was created on a different date and found on a different device. The court therefore adopted the Guideline range and sentenced Hall to 360 months' imprisonment.

Hall appeals only the issue of whether the photographs and video of A.S. constitute a lascivious exhibition of her pubic area.

II

On appeal, Hall argues that the video and photographs found on his phone cannot support a five-level enhancement under the Guidelines principally because they do not depict a nude child, they are not sexually suggestive, and they are not cropped or freeze-framed in a way that evidences an intent to create sexually-explicit content. The Government argues in response that the district court's factual findings do not constitute clear error and are supported by this Court's precedent in *United States v. Holmes*, 814 F.3d 1246 (11th Cir. 2016).

In the district court, the Government has the burden to establish by a preponderance of the evidence that an enhancement is applicable. *See United States v. Kinard*, 472 F.3d 1294, 1298 (11th Cir. 2006). With respect to appeals dealing with the Guidelines, this Court "reviews purely legal questions *de novo*, a district court's factual findings for clear error, and, in most cases, a district court's application of the [G]uidelines to the facts with due deference." *United States v. Rodriguez-Lopez*, 363 F.3d 1134, 1136–37 (11th Cir. 2004) (internal quotation marks omitted). Factual findings will be clearly erroneous if, after reviewing all of the evidence, this Court is "left with a definite and firm conviction that a mistake has been committed." *United States v. Foster*, 155 F.3d 1329, 1331 (11th Cir. 1998).

Additionally, when applying the Guidelines to the facts of the case, "the due deference standard is, itself, tantamount to clear error review." *United States v. Rothenberg*, 610 F.3d 621, 624 (11th Cir. 2010) (internal quotation marks omitted).

The five-level enhancement that is the focus of this appeal is applicable "[i]n any case in which the defendant's instant offense of conviction is a covered sex crime . . . and the defendant engaged in a pattern of activity involving prohibited sexual conduct" with a minor. U.S. Sentencing Guidelines Manual § 4B1.5(b) (U.S. Sentencing Comm'n 2016). The commentary to § 4B1.5 of the Guidelines explains that "the defendant engaged in a pattern of activity involving prohibited sexual conduct if on at least two separate occasions, the defendant engaged in prohibited sexual conduct with a minor." *Id.* cmt. n.4(B)(i).

Production of child pornography under 18 U.S.C. § 2251(a) and (e) constitutes a covered sex crime. *See id.* cmt. n.2. The production of child pornography is also considered "prohibited sexual conduct." *See id.* cmt. n.4(A)(ii). The relevant statute defines "child pornography" as "any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where . . . the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct." 18 U.S.C. § 2256(8)(A). Further, "sexually explicit conduct" is defined to include the "lascivious exhibition of the

7

genitals or pubic area of any person." *Id.* § 2256(2)(A)(v) (2008) (effective Oct. 13, 2008 to Dec. 6, 2018).

This Court has previously defined a "'lascivious exhibition' as one that potentially 'excit[es] sexual desires' or is 'salacious.'" *United States v. Grzybowicz*, 747 F.3d 1296, 1305–06 (11th Cir. 2014) (quoting *United States v. Williams*, 444 F.3d 1286, 1299 (11th Cir. 2006), *rev'd on other grounds*, 553 U.S. 285, 128 S. Ct. 1830, 170 L. Ed. 2d 650 (2008)); *see Holmes*, 814 F.3d at 1251 (same). Because "what constitutes forbidden lascivious exhibition is not concrete," the lascivious nature of visual depictions should be determined "with respect to the actual depictions themselves" on a case-by-case basis. *See Holmes*, 814 F.3d at 1251 (quotation marks omitted). Despite the case-specific nature of the lasciviousness inquiry, *Holmes* makes clear that nudity is neither necessary nor sufficient to a finding of lasciviousness. *See id.* Moreover, sexual suggestiveness, while probative if it exists, is also not a necessary prerequisite to a finding of lasciviousness. *See id.* at 1252. Thus, "depictions of otherwise innocent conduct may in fact constitute a 'lascivious exhibition of the genitals or pubic area of the minor' based on the actions of the individual creating the depiction." *Id.* at 1251–52. That is because "lasciviousness is not a characteristic of the child photographed but of the exhibition which the photographer sets up for an audience that consists of himself or like-minded pedophiles." *United States v. Wiegand*, 812 F.2d 1239, 1244 (9th Cir. 1987).

8

This is not to say that innocuous pictures of children become lascivious because they end up in the hands of a pedophile who is sexually excited by them. *Cf. United States v. Williams*, 553 U.S. 285, 301, 128 S. Ct. 1830, 1843, 170 L. Ed. 2d 650 (2008) (holding that 18 U.S.C. § 2252A(a)(3)(b), which uses §2256(2)(A)'s definition of "sexually explicit conduct," cannot apply "[w]here the material at issue is a harmless picture of a child in a bathtub and the defendant, knowing that material, erroneously believes that it constitutes a lascivious exhibition of the genitals" (internal quotation marks omitted)); *United States v. Miller*, 829 F.3d 519, 526 n.3 (7th Cir. 2016) ("The statute does not criminalize Sear's catalogs because they are in the hands of a pedophile."). To be lascivious, the visual depiction must at least suggest that the producer of the depiction intended "to attract notice to the genitals or pubic area" of the children in the image for the purpose of exciting a viewer's sexual desires. *United States v. Knox*, 32 F.3d 733, 745 (3d Cir. 1994).

We can gauge the producer's intent to attract notice to the child's genital or pubic area in order to excite a sexual desire by analyzing the focus of the visual depictions and the areas or attributes to which the producer chooses to draw the viewer's attention. Close focus, zooming, or freeze-framing from a video stream, as well as the angle from which visual depictions are captured, speak volumes about the character of the exhibition which the photographer sets up for himself or like-minded pedophiles. *See Holmes*, 814 F.3d at 1252 (holding that a reasonable jury

9

could have found that Holmes's videos and screenshots of his sixteen-year-old stepdaughter constituted a lascivious exhibition of her pubic area based on Holmes's actions, which included placing the camera in his stepdaughter's bathroom, adjusting the angle and focus of that camera to capture her pubic area, and editing the videos to capture close-up views of her pubic area); *United States v. Johnson*, 639 F.3d 433, 440–41 (8th Cir. 2011) (holding that a reasonable jury could find the videos surreptitiously taken of minors in an examination room lascivious based on the focus of the camera to capture the women's bodies, as opposed to their faces, and the placement of a camera in a room where women were likely to be partially or completely nude); *see also United States v. Horn*, 187 F.3d 781, 790 (8th Cir. 1999) (holding that a reasonable jury could conclude that the exhibitions of the pubic area were lascivious despite the fact that the girls wore swimsuits because the videos of the girls were "freeze-framed at moments when their pubic areas [were] most exposed, as, for instance when they [were] doing cartwheels").

Upon considering whether the four photographs and one video submitted in Hall's case supported the five-level enhancement, the district court determined that the two photographs of A.S. on the couch in her two-piece swimsuit were "the most damning." According to the district court, those photographs captured a "side view" of A.S. in a swimsuit bottom that "was loose enough where you could actually see

10

behind it." The district court therefore found that the photographs were "definitely a lascivious exhibition of the genitals or pubic area of any person."

The district court also found that the video of A.S. constituted a lascivious exhibition of her pubic area because it "zoom[ed] into the obvious private parts of the child sitting on the stool." The court also noted that its finding was supported by the fact that A.S. was not doing or saying anything of note in the video. The court therefore implied that there appeared to be no non-sexual purpose for the video.

After reviewing the photographs of A.S. on a couch in her swimsuit, we hold that the district court did not clearly err in finding that the two photographs were a lascivious exhibition of A.S.'s pubic area. The photographs evidence Hall's intent to attract notice to A.S.'s pubic area to excite his sexual desires. Hall took the photographs of A.S. on a day that she was wearing a swimsuit and at a moment when she was sitting with her legs open and spread apart from each other. Moreover, the angle from which the photographs were taken sets up a line of sight to the part of A.S.'s pubic area that is exposed due to the loose-fitting nature of her swimsuit bottoms. It is therefore not clear what non-sexual purpose the photographs might serve, especially considering that A.S. is looking away from the camera, focusing instead on something out of the frame. *See Johnson*, 639 F.3d at 440 ("A reasonable jury could also have concluded that because the video clips show the females generally from their shoulders to their calves . . . that Johnson attempted to obtain

11

images portraying them as sexual objects and that their facial features were apparently of little or no importance.").

We also hold that the district court did not clearly err in finding that the video of A.S. included a lascivious exhibition of A.S.'s pubic area. The video was focused on A.S.'s torso, as opposed to her face or her whole body. For approximately twenty-percent of the whole video, the phone camera homed in on A.S.'s pubic area, making her pubic area the center of attention. Hall's decision to "zoom-in" on A.S.'s pubic region for twelve seconds of the video is materially indistinguishable from a defendant's decision to freeze-frame portions of a video depicting young girls doing cartwheels in their swimsuits, which we have noted constitutes a "lascivious exhibition." *Holmes*, 814 F.3d at 1252 (citing with approval *Horn*, 187 F.3d at 790). Both decisions indicate the photographer's intent to attract notice to the child's pubic area in order to excite a sexual desire. Like the photographs, it is not clear what non-sexual purpose the video might serve, considering that A.S. is not speaking or doing anything of note throughout the video's duration.

In sum, Hall chose to capture a prolonged view focused on A.S.'s pubic area in his video and chose an angle of view in the still photographs that revealed a portion of A.S.'s bare pubic area. Those decisions evidence a clear intent to attract notice to A.S.'s genital or pubic area in order to excite Hall's sexual desires. Despite Hall's arguments to the contrary, cropping or freeze-framing a photograph are not

the only ways to evidence an intent to create sexually-explicit content.  The actions of "zooming-in" or choosing a specific camera angle can accomplish the same goal. Our holding is buttressed by the fact that Hall has not provided any non-sexual explanation for his photographic choices.  *See Grzybowicz*, 747 F.3d at 1306 ("Grzybowicz cannot and has not suggested any non-sexual purpose [that photographs of a minor's pubic area] might have served or how they might possibly be viewed as non-sexual.").

Additionally, the district court correctly noted during the sentencing hearing that the context in which the visual depictions are found can also be relevant in determining whether the producer intended the depictions to elicit a sexual response. *See United States v. Smith*, 459 F.3d 1276, 1296 n.17 (11th Cir. 2006) ("That the photographs of the victim were found with other sexually explicit photographs could make it more likely that their purpose was to elicit a sexual response.").  In addition to the photographs and video that are the subject of this appeal, a search of Hall's cellphone also revealed a number of website URLs that contained sexually explicit phrases relating to incest and child pornography.

Under clear error review, we conclude that the district court correctly found that the photographs and video of A.S. qualify as a second occasion of prohibited sexual conduct based on the lascivious exhibition of A.S.'s pubic area.  Those depictions, combined with Hall's conviction on Count 1, supported the district

court's holding that the Government satisfied its burden of proving that the five-level enhancement under § 4B1.5(b)(1) of the Guidelines applied here.

**AFFIRMED.**