# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-2969
_____

United States of America

*Plaintiff - Appellee*

v.

David Lee Emmert, Jr.

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Davenport

_____

Submitted: January 15, 2016
Filed: June 15, 2016

_____

Before WOLLMAN, MELLOY, and COLLOTON, Circuit Judges.

_____

MELLOY, Circuit Judge.

David Emmert, Jr., was convicted by a jury of possession of child pornography, in violation of  18 U.S.C. § 2252(a)(4)(B) and 2252(b)(2).  The district court[1]

_____

[1] The Honorable James E. Gritzner, United States Chief District Judge for the Southern District of Iowa.

sentenced Emmert to 240 months in prison and ordered him to pay $500 in restitution to one of his victims. Emmert appeals, arguing the district court erred in: (1) admitting evidence of his prior sexual abuse conviction and uncharged sexual abuse of a minor; (2) enhancing his sentence based on an adult conviction for sexual assault that occurred when Emmert was 17 years old; and (3) ordering restitution. We affirm.

## I. Background

This case began as a sexual abuse investigation in February 2010 in response to allegations that Emmert had sexually abused his 13-year-old daughter, LE. On February 12, 2010, officials obtained a search warrant and conducted a search of Emmert's home. During the search, police found a desktop computer with a webcam, a laptop computer, 39 DVDs, and an external hard drive. The DVDs contained sexually explicit images and videos of JS, a girl who had been fourteen or fifteen years old when the images were recorded. The external hard drive contained images of at least three different minor females: DF from Ohio, LM from Georgia, and DC from Nevada. All three were thirteen or fourteen years old when the images were recorded. Investigators also found programs related to hacking and webcam infiltration on Emmert's desktop computer. During the course of the investigation, officials learned Emmert had been convicted for sexually abusing his younger sister, EB, in 1989, when Emmert was 17.

On December 11, 2011, a grand jury indicted Emmert on charges of sexual exploitation of a child, in violation of 18 U.S.C. §§ 2251(a), 2251(e), and 3559(e), and possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B) and 2252(b)(2). On December 21, 2011, the government advised Emmert that he faced increased penalties if convicted due to his prior conviction for sexually abusing EB. Specifically, the potential penalty for possession of child pornography increased from

a ten-year maximum sentence to a ten-year minimum sentence and a twenty-year maximum sentence.

Before trial, the government dismissed the charge for sexual exploitation of a child. Emmert also filed two motions in limine, suggesting he would face unfair prejudice if the government were allowed to introduce evidence of: (1) his 1989 conviction for sexual abuse of EB, and (2) the uncharged allegations of sexual abuse of LE. The district court denied Emmert's motions and permitted the government to use evidence relating to EB and LE under Rule 414. The district court provided a cautionary instruction to jurors regarding this evidence.

A jury trial commenced on May 5, 2014, regarding the remaining count of possession of child pornography. EB, LE, and four minor females testified against Emmert. JS testified about her two-year online relationship with Emmert, during which he threatened to hack her computer if she did not provide certain sexually explicit images. LM and DC testified that they were asked to perform sexually explicit acts over webcam and knew someone was watching, but they did not know they were being recorded. DC learned she was being recorded when her mother found out about an explicit video of her posted on a website. LM also learned videos of her had been recorded from other people who saw the videos online. DF testified she did not know or believe that anyone was watching her through her webcam until Emmert contacted her and threatened to publish explicit images of her unless she followed his orders. When DF created a new email account to escape Emmert's harassment, Emmert eventually tracked her down and published 135 explicit images of DF on the social networking and photo sharing site, Flickr, as punishment. An investigator testified that images of JS, DF, LM, and DC were found on Emmert's external hard drive and his DVDs.

On May 9, 2014, the jury found Emmert guilty of possessing child pornography, including at least 545 videos and 180 images. The district court

sentenced Emmert to 240 months in prison and a lifetime of supervised release and ordered him to pay $500 in restitution to the family of DC to cover medical expenses related to suicide attempts and cutting herself. Emmert appeals.

## II. Discussion

Emmert argues the district court erred in: (1) admitting Rule 414 evidence of a prior sexual abuse conviction and uncharged sexual abuse of a minor; (2) enhancing his sentence based on an adult conviction of sexual assault that occurred when Emmert was 17 years old; and (3) ordering restitution.

### A. Rule 414 Evidence

We review evidentiary rulings for abuse of discretion. United States v. Never Misses A Shot, 781 F.3d 1017, 1027 (8th Cir. 2015). Rule 414 provides: "In a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation." Fed. R. Evid. 414(a). "Child molestation" includes acts relating to child pornography which are prohibited by 18 U.S.C. chapter 110. Id. 414(d)(2)(B). The evidence can be used for any purpose for which it is relevant, "including the defendant's propensity to commit such offenses." United States v. Gabe, 237 F.3d 954, 959 (8th Cir. 2001). Evidence of a prior child molestation is relevant if it was "committed in a manner similar to the charged offense." Never Misses A Shot, 781 F.3d at 1027 (quoting United States v. Rodriguez, 581 F.3d 775, 796 (8th Cir. 2009)). If the evidence is relevant, "admissibility hinges on whether the testimony's probative value is substantially outweighed by one or more factors enumerated in Rule 403." Id. In evaluating admissibility of Rule 414 evidence, placing limits on the testimony and providing cautionary jury instructions may indicate that the district court properly balanced the probative value with the risk of unfair prejudice. See United States v. Crow Eagle, 705 F.3d 325, 328 (8th Cir. 2013).

Here, Emmert argues his prior conviction for sexual abuse of EB and the alleged sexual abuse of LE are too dissimilar to be relevant to the instant charged offense of possession of child pornography. In particular, Emmert contends the nature of the offenses are different because he knew EB and LE were minors, but did not know three of the alleged victims of child pornography were minors. In addition, Emmert claims that his conviction for sexually abusing EB is too remote to the current proceeding and that the testimony of LE regarding the uncharged sexual abuse is unreliable. Because EB and LE were the first witnesses called by the government, Emmert contends their testimony was highly prejudicial in shaping the jury's first impression of him.

As the district court concluded, the evidence that Emmert sexually abused EB and LE is probative of Emmert's interest in underage girls. Emmert's sexual abuse and child pornography victims were similar in age, and Emmert performed or possessed images depicting similar explicit acts on each victim. In this way, Emmert's prior conduct shows he has a propensity for exploiting young girls and connects him to the pornographic images found on his hard drive. The district court tempered the prejudicial effect of this evidence by providing a jury instruction on propensity evidence. Moreover, for Rule 414 purposes, it does not matter that Emmert's prior sexual abuse of EB occurred up to twenty years before the instant offense. See Gabe, 237 F.3d at 960 (noting that Congress placed no time limit on Rule 414 evidence and permitting evidence of sexual abuse from twenty years ago). Thus, we affirm the district court's decision to admit evidence of Emmert's prior acts of sexual abuse.

B. Sentencing Enhancement

Next, Emmert argues the district court violated the Eighth Amendment when it imposed a sentencing enhancement pursuant to 18 U.S.C. § 2252(b)(2).[2] "We review claims of constitutional error and issues of statutory construction de novo." United States v. Smith, 656 F.3d 821, 826 (8th Cir. 2011) (quoting Royal v. Kautzky, 375 F.3d 720, 722 (8th Cir. 2004)).

At oral argument, Emmert's counsel cited United States v. Sykes, 809 F.3d 435 (8th Cir. 2016), in which we considered whether the Eighth Amendment prohibits the use of a juvenile court conviction for enhancement purposes under the Armed Career Criminal Act ("ACCA"). Although similar to the issue here, Sykes does not foreclose arguments that the § 2252(b) enhancement is distinguishable from the ACCA enhancement. Rather, we look to United States v. Woodard, 694 F.3d 950, 953 (8th Cir. 2012), where we held that the Eighth Amendment does not prohibit the use of a juvenile adjudication as the basis for applying the § 2252(b) sentencing enhancement. In so holding, we relied on a prior holding that a juvenile adjudication may constitute a prior conviction with regard to the ACCA sentencing enhancement. See United States v. Smalley, 294 F.3d 1030, 1031 (8th Cir. 2002). In Woodard, we "appl[ied] the [Smalley] analysis . . . [to] hold that a juvenile adjudication may be considered a prior conviction under 18 U.S.C. § 2252(b)." Woodard, 694 F.3d at 953.

Here, we are presented with a constitutional, rather than statutory, question. As discussed above, we have determined that ACCA sentencing enhancements based on convictions for crimes committed as a juvenile do not violate the Eighth Amendment. Sykes, 809 F.3d at 440; United States v. Jones, 574 F.3d 546, 553 (8th Cir. 2009). Considering the logic of Woodard, such convictions necessarily may be considered

---

[2] Section 2252(b)(2) increases the minimum and maximum sentences in child pornography cases where the defendant has a prior sexual abuse conviction.

in determining whether the § 2252(b) enhancement applies.  Therefore, we conclude that the district court did not err when it considered Emmert's prior conviction for sexual assault in applying the § 2252(b) sentencing enhancement.

## C. Restitution

Finally, Emmert argues the district court erred in ordering restitution when no causal connection between his actions and DC's losses had been established.  "We review 'the district court's decision to award restitution for an abuse of discretion and the district court's finding as to the amount of loss for clear error.'" United States v. Beckmann, 786 F.3d 672, 681 (8th Cir. 2015) (quoting United States v. Kay, 717 F.3d 659, 666 (8th Cir. 2013)).  Pursuant to 18 U.S.C. § 2259, "[r]estitution is proper . . . only to the extent that the defendant's offense proximately caused the victim's losses." Id. at 682 (citing Paroline v. United States, 134 S. Ct. 1710, 1720 (2014)).  The Supreme Court noted, "The unlawful conduct of everyone who reproduces, distributes, or possesses the images of [a] victim's abuse . . . plays a part in sustaining and aggravating th[e] tragedy." Paroline, 134 S. Ct. at 1726.  "[I]n determining the amount of restitution owed to a child pornography victim by a defendant, district courts may consider a number of factors, though they should not treat the inquiry as a purely mathematical or mechanical exercise." United States v. Evans, 802 F.3d 942, 950 (8th Cir. 2015).

Emmert argues the district court should not have ordered restitution because there was no evidence offered at sentencing to support a basis for awarding restitution. As documented in Emmert's PSR and at oral argument, the parties disagree as to when DC was informed that Emmert possessed images of her and when she sought treatment.[3]  Emmert contends that DC's treatment predates the time when DC became

---

[3] The Victim Impact portion of Emmert's PSR included DC's claim for "$500 in restitution to cover her medical expenses (copayments and out of pocket expenses) from suicide attempts and cutting herself."  However, the PSR reflects that "[Emmert]

aware that Emmert possessed the pornographic images of her. As such, Emmert concludes that he cannot be held responsible for a loss arising before he committed the instant offense. In awarding restitution, the district court concluded: "Because this is a rather modest claim under all of the circumstances and while it is not related to specific medical care, the fact of some emotional distress that might have supported the need for some medical care, I think the amount of $500 . . . is adequately supported by the record."

During trial, DC testified that after learning the explicit video of her was posted online, she felt "ashamed and really guilty." DC's mother also testified that DC "was devastated about the fact that all of these strange people were out there watching her." Considering this testimony, the mere absence of evidence detailing the specific nature and timing of medical expenses is not sufficient to show an abuse of discretion. Further, Emmert's causation arguments are unavailing in light of Paroline, which recognized the existence of ongoing harm each time someone possesses images of a victim. At trial, the jury found beyond a reasonable doubt that Emmert possessed child pornography between 2005 and February 2010. For purposes of considering restitution, there was evidence at trial that Emmert possessed a video of DC as of June 9, 2008. R. Doc. 194, at 140-41, 203, 210. Contrary to Emmert's contentions, the government need not prove that DC incurred a loss after she learned Emmert's identity in 2011. Rather, it is sufficient to show that DC received treatment subsequent to the time Emmert possessed images of her. Because the record supports a finding that Emmert possessed images in June 2008, and DC requested restitution for treatment and services provided in 2009 and 2010, the district court did not abuse its discretion in concluding that Emmert proximately caused DC's loss. Finally, despite the fact that DC has not documented each expense, the district court was entitled to rely on the testimony and a basic knowledge of medical expenses in

object[ed] . . . , noting that DC's request involve (sic) her medical care and treatment in 2009 and 2010 and that it was not until 2011 when it was discovered that [Emmert] possessed child pornography involving DC."

determining that $500 in restitution was a reasonable and likely underestimated sum for the type of medical and psychological treatment DC required.  Thus, we conclude that the district court did not abuse its discretion in awarding DC restitution, nor did the district court clearly err in determining the amount of the loss to be $500.

## III. Conclusion

Based on the foregoing, we affirm the judgment of the district court.

_____