# United States Court of Appeals
### For the Eighth Circuit

_____

No. 17-3061

_____

United States of America,

*Plaintiff - Appellee,*

v.

Oscar Henry Steinmetz,

*Defendant - Appellant.*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: April 12, 2018
Filed: August 15, 2018

_____

Before COLLOTON, ARNOLD, and SHEPHERD, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Oscar Henry Steinmetz was convicted of producing child pornography, in violation of 18 U.S.C. § 2251(a). At trial, the government introduced evidence that law enforcement officers had seized from Steinmetz's home during a warrantless

search. Steinmetz contends that the district court[1] erred in denying his motion to suppress this evidence because he did not voluntarily consent to the search. Alternatively, he asserts that even if his consent was voluntary, the search exceeded the scope of his consent. Steinmetz also argues that the district court erred by overruling his objections to certain prejudicial testimony and by restricting his right to cross examine his accuser. We conclude that there was no reversible error, and therefore affirm.

## I.

The child pornography investigation began in April 2015 when a woman in her late twenties, identified as E.S., made a complaint to the Maryland Heights Police Department in Missouri. E.S. alleged that Steinmetz, her stepfather, had abused her when she was between the ages of thirteen and sixteen. Some of the abuse occurred while E.S. and Steinmetz were watching pornographic Japanese anime films, a type of animated production. E.S. also reported that Steinmetz had photographed some of the abuse.[2]

Detective Kendra House decided to contact Steinmetz and ask for consent to search his residence and computers. On May 1, 2015, she and another detective approached Steinmetz at his workplace, and he agreed to accompany them to the police station. The government maintains that Steinmetz, during an interview,

---

[1]The Honorable Rodney W. Sippel, Chief Judge, United States District Court for the Eastern District of Missouri, adopting the report and recommendation of the Honorable Shirley Padmore Mensah, United States Magistrate Judge for the Eastern District of Missouri.

[2]A witness testified that the victim was "transitioning to the male gender" when she made her complaint to the police, and the victim later adopted the initials "F.M." Like the district court, we use the victim's initials at the time of the offense conduct.

consented to a search of his residence and computers. Investigators then searched the house and found incriminating evidence. A grand jury charged Steinmetz with production of child pornography.

Steinmetz moved to suppress all evidence that investigators seized during the search. After a hearing, a magistrate judge recommended denying the motion, and the district court adopted the recommendation. The court found that Steinmetz voluntarily consented to the search of his residence, computers, and other media, and that investigators did not exceed the scope of his consent. The record on the motion included testimony from Detective House, a videorecording of the Steinmetz interview, consent forms and waiver forms that Steinmetz signed, and photographs taken during the search.

Steinmetz also moved *in limine* to exclude certain evidence as unfairly prejudicial. The disputed evidence included (1) testimony that Steinmetz sexually abused E.S. when she was between the ages of thirteen and sixteen; (2) pornography from Steinmetz's computer that depicted child victims other than E.S.; (3) pornographic anime that investigators seized from Steinmetz's residence; and (4) images of E.S.'s mother wearing a bondage costume that E.S. was wearing in other images. The court ruled that the evidence of sexual abuse and pornographic anime was admissible as inextricably intertwined with the child pornography charge. The court concluded that the pornographic images of other children were admissible under Federal Rule of Evidence 404(b) to show identity and under Rule 414 as evidence of similar crimes in a child molestation case. The court reserved ruling on the images of E.S.'s mother wearing the bondage costume, but ultimately allowed the prosecution to present one such image.

A jury found Steinmetz guilty of production of child pornography. The district court sentenced him to 240 months' imprisonment.

II.

Steinmetz first argues that the district court erred in denying his motion to suppress evidence that investigators seized during the search of his residence. The Fourth Amendment generally permits investigators to conduct a warrantless search of a home if they obtain a resident's voluntary consent. *Fernandez v. California*, 571 U.S. 292, 298-301 (2014). Whether a person voluntarily consented to a search is a factual determination that we review for clear error. *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973); *United States v. Quintero*, 648 F.3d 660, 665 (8th Cir. 2011).

Steinmetz argues that he did not voluntarily consent to the search of his residence because his consent was the product of coercive police authority. We consider the "totality of all the circumstances" to evaluate whether consent was "voluntary or was the product of duress or coercion, express or implied." *United States v. Mendenhall*, 446 U.S. 544, 557 (1980).

On careful review of the record, we conclude that the district court did not clearly err in finding that Steinmetz voluntarily consented to the search. The district court found with adequate support that Steinmetz "appeared to be an articulate, intelligent, man in his early sixties," that he "appeared to be relatively at ease" throughout his interview with officers, and that "with one or two brief exceptions, neither Steinmetz nor any of the officers raised their voices." Before the interview, Detective House advised Steinmetz of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), and Steinmetz signed a waiver form, acknowledging that he understood his rights and was willing to answer questions.

The district court found, without clear error, that after about seventy-five minutes, Steinmetz said it would be "okay" for Detective House to look at his computer, hard drives, and thumb drives to verify that he did not have naked pictures of E.S. Steinmetz also agreed that it would be "okay" for the detective to send his computer, computer media, and cameras to a "forensic group" for examination. Shortly thereafter, Steinmetz signed a "Consent to Search" form that authorized police to search his house. The form plainly notified him of "the right to refuse to consent to the search described above and to refuse to sign this form."

Steinmetz argues nonetheless that the interview environment rendered his consent involuntary. He emphasizes that he was unexpectedly confronted by multiple armed officers at his place of work, and questioned for hours in a small, locked, windowless room. The district court found, however, that the officers made "no show of force" when they approached Steinmetz at his workplace. At the police station, Detective House and her supervisor, Sergeant Richard White, questioned Steinmetz individually; the interview room—which measured ten feet by seven feet—was never crowded. The record supports the district court's finding that Steinmetz appeared "relatively at ease and calm" for the duration of the interview. Even assuming that Steinmetz was not free to leave, he gave consent after receiving *Miranda* warnings, and custodial status does not preclude voluntary consent. *United States v. Beasley*, 688 F.3d 523, 531 (8th Cir. 2012).

Steinmetz objects that the detectives interviewed him for approximately six hours, but the district court made no error in finding that the length of the interrogation did not render Steinmetz's consent involuntary. Steinmetz orally consented to the search and signed a "Consent to Search" form within the first ninety minutes of the interview. That the meeting carried on for several more hours is irrelevant to whether Steinmetz's earlier expression of consent was voluntary.

Steinmetz next contends that his consent was involuntary because the officers misled him about the purpose and execution of the search. He complains that the consent forms were not specific as to the items that the officers intended to search. The detective, however, already had obtained oral consent to search computers and other media, and a reasonable person would have understood that consent to search the house encompassed those items.

Steinmetz also objects that Sergeant White gave assurances that he would supervise the search himself, but then ended up remaining at the police station. The record does not show whether White intentionally misrepresented his plan or whether changed circumstances led him to forego traveling to the scene of the search, but the identity of the supervising officer was not so material that misinformation on that point requires a finding of involuntariness under the totality of the circumstances. The district court found, without clear error, that Detective House informed Steinmetz that the purpose of the search was to look for nude pictures of E.S., and that the search would extend to Steinmetz's computers, hard drives, thumb drives, cameras, and computer media. Sergeant White did not promise to limit the scope of the search, and a reasonable person would have understood that investigators could search the same areas and objects regardless of the supervisor's identity.

Under the totality of the circumstances, the district court did not clearly err in finding that Steinmetz voluntarily consented to a search.

B.

Alternatively, Steinmetz contends that investigators exceeded the scope of his consent. Steinmetz asks us to conclude that his consent was predicated on his presence during the search, and that the officers therefore exceeded the scope of his consent when they searched his residence while he was at the police station.

"A suspect may of course delimit as he chooses the scope of the search to which he consents." *Florida v. Jimeno*, 500 U.S. 248, 252 (1991). The scope of a suspect's consent depends on what "the typical reasonable person" would have understood by the exchange between the officer and the suspect. *Id.* at 251. "Where a suspect provides general consent to search, only an act clearly inconsistent with the search, an unambiguous statement, or a combination of both will limit the consent." *United States v. Beckmann*, 786 F.3d 672, 679 (8th Cir. 2015).

The district court found that Steinmetz "gave a general consent (both verbally and in writing) to a search of his residence and specifically consented to a search of his computers, external hard drives and other storage media." The court also determined that while Steinmetz stated that he would "prefer" to be present during the search, he did not "condition" his consent on his presence. These findings are not clearly erroneous. Although Steinmetz stated that he would "rather be there if he could," a "typical reasonable person" would not have understood that Steinmetz was limiting his consent by merely expressing a preference.

After Steinmetz expressed his desire to be present for the search, Sergeant White explained that the search was going to take place while Steinmetz remained at the station. The district court found that "[d]uring that discussion, it was clear that Steinmetz understood that officers were going to remove computers and related items from his home," and that "Steinmetz was not going to be allowed to accompany police to his house or to be present during the search." The videorecording substantiates this finding. Despite knowing the scope of the plan, Steinmetz did not insist on accompanying the officers, withdraw his consent, or otherwise make clear that his consent was conditioned on his presence during the search. To the contrary, even after learning that he would not be present for the search, Steinmetz told Detective House which key she could use to open the residence. Steinmetz's words and actions consistently communicated general consent to a search of his residence.

We thus conclude that the officers did not exceed the scope of Steinmetz's consent. The district court properly denied Steinmetz's motion to suppress.

III.

Steinmetz also appeals several of the district court's rulings at trial on the ground that certain evidence was irrelevant or unfairly prejudicial. We review the rulings for abuse of discretion. *United States v. Emmert*, 825 F.3d 906, 909 (8th Cir. 2016).

The district court admitted evidence that Steinmetz had sexually abused and molested the victim. Steinmetz objected under Federal Rule of Evidence 403 on the ground that the danger of unfair prejudice substantially outweighed the probative value of the evidence. He also objected that the evidence was improper character evidence under Rule 404. The court ruled, however, that the evidence was "inextricably intertwined" with the charged offense of producing child pornography, because the molestation of E.S. was part and parcel of the "grooming process" that led to the offense. The court acknowledged that the evidence was prejudicial, but concluded that the evidence was sufficiently probative to be admitted under Rule 403. Over the same objections, the court also admitted pornographic anime that was discovered at Steinmetz's home as "inextricably intertwined" with the charged offense.

We agree with the district court that the evidence of molestation and the pornographic anime are relevant to the charged offense, because they show the context in which Steinmetz took nude photographs of E.S. When Steinmetz first molested E.S., he showed her the pornographic anime at issue. He began to take nude photographs of the victim in the midst of ongoing sexual abuse. The challenged evidence thus showed the grooming process that enabled Steinmetz to photograph the victim. The evidence was relevant to showing how Steinmetz came to produce child

pornography, and the district court did not abuse its discretion by concluding that any unfair prejudice did not substantially outweigh the probative value.

Steinmetz also contends that the district court erred in admitting "miscellaneous" child pornography that investigators discovered in his possession, because these images did not involve E.S. But we agree with the district court that this evidence was admissible under Rule 414: "In a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation." Fed. R. Evid. 414(a). "Child molestation" includes acts relating to child pornography. *Id.* 414(d)(2)(B); *see also Emmert*, 825 F.3d at 909.

The miscellaneous child pornography depicted nude female children, and was therefore similar in kind to the pornographic images of E.S. that Steinmetz was charged with producing. The evidence tended to show that Steinmetz had an interest in lascivious photographs involving minor females. Rule 414(a) permits evidence that shows the defendant's character or propensity to commit certain acts in a child molestation case, so prejudice to Steinmetz from this evidence was not "unfair" within the meaning of Rule 403. *United States v. Gabe*, 237 F.3d 954, 960 (8th Cir. 2001). The district court did not abuse its discretion on this point.

Steinmetz next urges that the district court erred under Rule 403 by admitting a pornographic image depicting his ex-wife in a bondage outfit. The challenged image showed the ex-wife wearing a harness that was identical to one that E.S. was wearing in another photograph. Both photographs were found in the Steinmetz residence and appeared to be taken in the same location. The similarities of the photographs, along with the relationship of the parties involved, tended to prove that Steinmetz produced both images, so the evidence was relevant to whether Steinmetz produced child pornography depicting E.S. It was not an abuse of discretion to conclude that the balancing test under Rule 403 allowed admission of the photograph.

IV.

In his last argument, Steinmetz contends that the district court violated his right under the Sixth Amendment to confront his accuser by limiting his ability to cross examine E.S. about her depression and counseling. The district court retains wide latitude to impose reasonable limits on cross-examination, *Delaware v. Van Arsdall*, 475 U.S. 673, 678-79 (1986), and whether mental health evidence is sufficiently probative to warrant examination is a fact-intensive determination. *See United States v. Love*, 329 F.3d 981, 984 (8th Cir. 2003); *United States v. Jimenez*, 256 F.3d 330, 343-44 (5th Cir. 2001). In this case, Steinmetz made no offer of proof to show how the proposed cross-examination might have been relevant to E.S.'s credibility or bias. Without such an offer, we cannot ascertain what evidence was excluded or whether any excluded evidence would have significantly affected the jury's impression of E.S.'s credibility. Steinmetz therefore has failed to establish an error in limiting cross-examination. *United States v. Leisure*, 844 F.2d 1347, 1360 (8th Cir. 1988); *United States v. Lavallie*, 666 F.2d 1217, 1220 (8th Cir. 1981).

\* \* \*

The judgment of the district court is affirmed.

_____