# United States Court of Appeals
### For the Eighth Circuit
_____

No. 22-3659
_____

United States of America

*Plaintiff - Appellee*

v.

Jacob Allen Monteer

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Western District of Missouri - Jefferson City
_____

Submitted: September 22, 2023
Filed: October 17, 2023
_____

Before LOKEN, GRUENDER, and BENTON, Circuit Judges.
_____

LOKEN, Circuit Judge.

Jacob Allen Monteer was charged in a five-count indictment with attempted bank robbery involving assault with a dangerous weapon (Count I); knowingly brandishing and using a pistol during and in relation to a crime of violence (Count II); knowingly discharging and using a pistol during and in relation to a crime of violence (Count III); knowingly discharging and using an AR-15 rifle during and in relation to a crime of violence (Count IV); and being an unlawful drug user in possession of

a pistol and an AR-15 rifle (Count V).  After a one-day bench trial, the district court[1] found Monteer guilty of the five offenses and sentenced him to 230 months imprisonment.  Monteer appeals his conviction, arguing the evidence was insufficient to convict him of any offense; the district court erred in denying his motion to suppress involuntary custodial statements he made to an FBI agent; and the district court erred by failing to include the term "knowingly" in reciting the elements of the Count II, III, and IV offenses when explaining its decision during a post-trial hearing. We affirm.

## I. Sufficiency of the Evidence

On November 30, 2017, Monteer attempted to rob a bank in Versailles, Missouri, demanding money and showing bank tellers part of a pistol in his sweatshirt pocket.  Leaving the bank empty-handed, Monteer led police on a high speed chase, driving a stolen pickup truck and firing his pistol from the vehicle at a police officer who had set up a roadblock.  The vehicle crashed, and Monteer fled on foot.  An officer caught Monteer and attempted to subdue him.  During the struggle, the officer's AR-15 rifle discharged.  Monteer was then restrained and arrested by additional officers.  While in custody, he waived his <u>Miranda</u> rights and made numerous incriminating statements to an FBI agent during a videotaped interview.

The government presented testimony by thirteen witnesses during the one-day bench trial -- three bank employees, a bank customer who initially followed Monteer as he fled, the man from whom he stole the pickup truck, six law enforcement officers involved in the pursuit and arrest, a bystander who saw Monteer shoot from the vehicle, and the interviewing FBI agent.  The government also introduced video from the bank's security camera and the recorded interview.  Monteer, representing

---

[1]The Honorable Brian C. Wimes, United States District Judge for the Western District of Missouri.

himself, did not testify nor call any defense witnesses.  The district court denied his motions for acquittal and issued a written order finding him guilty beyond a reasonable doubt on all counts.

Monteer argues the evidence was insufficient.  As to Counts I and II, no bank employee could positively identify him as the robber who brandished a gun, only describing the clothing the robber wore.  As to Count III, neither witness who saw a gun being fired from inside the truck could identify the driver.  As to Count IV, no witness saw Monteer discharge the officer's rifle during the scuffle.  And there was insufficient evidence as to Count V if Monteer's admissions are suppressed.

"In reviewing the sufficiency of the evidence after a bench trial, we apply the same standard that we apply when reviewing a jury verdict," reviewing the evidence "in the light most favorable to the verdict, upholding the verdict if a reasonable factfinder could find the offense proven beyond a reasonable doubt." United States v. Morris, 791 F.3d 910, 913 (8th Cir. 2015).  Here, because in Part II we uphold denial of his motion to suppress statements made during the custodial interview, there was ample evidence to convict Monteer on all five counts.  He admitted that he attempted to rob the bank, that he led police on a vehicle chase, that he fired a pistol as he approached an officer who had set up a roadblock, that he fled on foot when the vehicle crashed, that he wrestled with an officer who attempted to arrest him, that he touched the officer's rifle during the scuffle (but denied discharging it), and that he had used methamphetamine the morning of the incident.

In addition to Monteer's admissions, the bank's security camera video showed a man wearing a brown hoodie sweatshirt, plaid shorts, black socks with no shoes, and a red bandana covering his lower face enter the bank and interact with tellers.  It showed the man pull a black pistol from his sweatshirt pocket so that the tellers could see it.  When arrested, Monteer was wearing clothes identical to what the robber in the surveillance video wore.  The government introduced eyewitness testimony that

-3-

accounted for almost all the robber's movements as he entered the bank, interacted with tellers, and fled in a black truck and then on foot after the truck crashed. Two witnesses saw the robber fire shots through the truck's windshield at an officer who had set up a roadblock. The officer who pursued Monteer on foot and wrestled with him after the crash testified that Monteer tried to grab his rifle, that he heard the safety switch click off, and that the rifle then discharged. Another officer saw Monteer's hand on the trigger just before the rifle discharged.

Viewing this evidence in the light most favorable to the verdict, as we must, it was sufficient to support Monteer's conviction on all five counts.

## II. Were Monteer's Custodial Statements Involuntary?

Monteer asserts that incriminating statements made during a custodial FBI agent interview were involuntary because he was suffering from mental health issues that were "sufficient to overbear [his] will and critically impair his capacity for self-determination." United States v. LeBrun, 363 F.3d 715, 724 (8th Cir. 2004) (en banc), cert. denied, 543 U.S. 1145 (2005). Months after the interview, the court ordered an evaluation of Monteer's competency to stand trial. Two psychologists conducted the evaluation and found some evidence that Monteer was experiencing paranoia and delusional thinking stemming from frequent methamphetamine use prior to his arrest. Monteer argues this established a mental health condition rendering his statements involuntary and their admission at trial a violation of his constitutional right to due process.

"We review the district court's findings of fact for clear error and its legal conclusion as to whether a confession was voluntary de novo." Id. We examine the totality of the circumstances, "including both the conduct of law enforcement in exerting pressure to confess on the defendant and the defendant's ability to resist that pressure." United States v. Sandell, 27 F.4th 625, 630 (8th Cir. 2022) (quotations

omitted).  The defendant's mental condition is one factor we assess.  Id.  This standard of review is "very demanding."  LeBrun, 363 F.3d at 726.

The district court reviewed the video of the FBI agent's interview before denying Monteer's motion to suppress. Throughout the interview, Monteer appeared alert and spoke coherently.  He followed the agent's questions and described the robbery and his subsequent flight in detail. While he made some odd statements, he did not appear to be distracted or hallucinating at any point.  The psychologists assessed Monteer's competency to stand trial.  They considered the FBI agent's interview but were not asked to opine, and did not opine, on Monteer's mental condition on the day of the interview or whether the statements were voluntary.  The psychologists' evaluations do not undermine the district court's finding that Monteer had the mental capacity to make voluntary statements.

Moreover, "[a] statement is involuntary when it was extracted by threats, violence, or express or implied promises."  LeBrun, 363 F.3d at 724.  Thus, as Monteer concedes, "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment."  United States v. Thunderhawk, 799 F.3d 1203, 1206 (8th Cir. 2015), quoting Colorado v. Connelly, 479 U.S. 157, 167 (1986).  There must be some coercive police activity exerted upon the defendant for the defendant's statements to be involuntary, even if the defendant's mental condition is in a weakened state.  See Smith v. Bowersox, 311 F.3d 915, 922 (8th Cir. 2002), cert. denied, 540 U.S. 893 (2003); Jenner v. Smith, 982 F.2d 329, 333 (8th Cir.), cert. denied, 510 U.S. 822 (1993).

Here, Monteer's statements were not the product of coercive police conduct. Monteer points to the FBI agent's statement early in the interview:  "This [interview] is really a courtesy for you to explain why we're in this situation, so I can go back to a federal prosecutor and say 'Met with him, cool dude, he's being honest, this is why

-5-

he's in this position, what can we work out?'" Monteer asserts that his mental health issues cause him to "read hidden meaning into the behavior of others" and he read this statement as an implied promise of leniency. But the agent's statement was at most a promise to tell a prosecutor that Monteer was cooperating and may warrant a favorable plea agreement. A promise to make a defendant's cooperation known to the prosecutor does not render an otherwise voluntary statement involuntary. See United States v. Mendoza, 85 F.3d 1347, 1350 (8th Cir. 1996). And a mistaken belief in an implied promise of leniency does not render statements that follow involuntary. See LeBrun, 363 F.3d at 725. Thus, even if Monteer's mental health issues reduced his ability to resist pressure to make incriminating admissions, that does not warrant suppressing the admissions as involuntary. The district court did not err in denying Monteer's motion to suppress.

### III. The Knowingly Issue

At the close of the one-day bench trial, the district court denied Monteer's motion for judgment of acquittal, took the case under advisement, and scheduled a remote post-trial hearing at which the court would "make a record of the facts and the findings that I make with particular Counts." The court held that hearing two days later, finding Monteer guilty beyond a reasonable doubt of committing each of the five charged offenses. Three days later, the court issued a written Order finding, "consistent with the ruling on the record," that Monteer was guilty of each of the five counts as charged in the indictment.

Monteer argues the district court "proffered an incorrect instruction" at the post-trial hearing by failing to include the term "knowingly" in its recitation of the elements of Counts II, III, and IV. Monteer argues this "instruction" was based on Eighth Circuit Model Jury Instructions but omitted a "knowingly" *mens rea* element that is required by 18 U.S.C. § 924(c)(1)(A) and was included in a "*pro se* verdict director" Monteer submitted before trial.

This contention is without merit. There are no jury instructions in a bench trial. The district court considers the evidence submitted at trial and makes findings of fact and conclusions of law in determining whether the government has proved the offenses charged in the indictment beyond a reasonable doubt. Here, the indictment charged that Monteer "knowingly" brandished and used a pistol during and in relation to a crime of violence (Count II), "knowingly" discharged and used a pistol during and in relation to a crime of violence (Count III), and "knowingly" discharged and used an AR-15 rifle during and in relation to a crime of violence (Count IV). The district court in its written Order found that Monteer "knowingly" committed each of these offenses and recited that its findings were consistent with the court's oral ruling at the post-trial hearing. Neither Monteer nor stand-by trial counsel, who attended the post-trial hearing, objected to the court's oral summary of the elements of the charged offenses. Neither filed a post-trial motion challenging the court's findings and conclusions even though stand-by counsel was granted a one-month extension of time to do so. The evidence that Monteer committed these three offenses "knowingly" was overwhelming. There was no error, plain or otherwise.

The judgment of the district court is affirmed.

_____