United States Court of Appeals

For the Eighth Circuit

_____

No. 24-2130

_____

United States of America,

*Plaintiff - Appellee*,

v.

Amikhet En Maati, also known as Warren Coker,

*Defendant - Appellant*.

_____

Appeal from United States District Court
for the District of Nebraska - Lincoln

_____

Submitted: March 20, 2025
Filed: July 22, 2025

_____

Before COLLOTON, Chief Judge, ERICKSON and GRASZ, Circuit Judges.

_____

COLLOTON, Chief Judge.

Amikhet En Maati was convicted after a bench trial on five counts involving sexual exploitation of minors. The district court[*] sentenced Maati to 720 months' imprisonment and a life term of supervised release. On appeal, Maati challenges the

_____

[*]The Honorable John M. Gerrard, United States District Judge for the District of Nebraska.

sufficiency of the evidence on two counts, the district court's admission of certain evidence at trial, and the reasonableness of his sentence. We affirm.

## I.

On September 9, 2022, the Lincoln Police Department received a call for service regarding potential sexual assault of two children: a nine-year-old female, J.R., and her eight-year-old brother, E.R. That evening, officers visited the residence where the children lived with their mother and Maati, who was their stepfather. Maati answered the door and spoke to the officers; they noted that Maati exhibited an atypical demeanor before retreating back inside the house. Eventually, the mother arrived and permitted the officers to enter the residence, but Maati had left the scene.

In the following days, nurse practitioner Ashley Harris interviewed J.R. and E.R. and conducted medical examinations. She testified that the children made statements consistent with having suffered sexual abuse by Maati. Harris also explained that she conducted anogenital examinations and collected samples to test for sexually transmitted diseases.

Officers then searched the residence based on consent from Maati's wife. They seized a red iPhone and each child's bedding. Around the same time, investigators learned through a separate investigation that Maati had been sharing child pornography with others on the encrypted file-sharing service Mega.

Investigator Ben Pflanz interviewed Maati at the police station on September 22. Maati admitted ownership of the red iPhone, gave Pflanz the device's password, and signed a consent to search form for the device. When investigators reviewed text messages between Maati and one of the people with whom he shared child pornography, they found a message in which Maati shared his Mega username and password. Officers then obtained a warrant to access the Mega account. In a search

-2-

of Maati's iPhone and Mega account, investigators found multiple videos of J.R. and E.R.

One video, entitled "IMG_3155.mov," begins with a nude image of J.R. As the video continues, a male voice—which Investigator Pflanz recognized as Maati's—directed J.R. to assume particular positions; the video shows a close-up image of her anus. Another video, entitled "IMG_3248.mov," depicted a nude E.R. getting dressed in his bedroom and included a close-up image of the child's penis.

A grand jury charged Maati with two counts of sexual exploitation of a minor, *see* 18 U.S.C. § 2251(a), two counts of violating § 2251(a) while on the sex offender registry, *see id.* § 2260A, and one count of possession of a visual depiction involving a minor engaged in sexually explicit conduct. *See id.* § 2252(a)(4)(B). After a bench trial, the district court found Maati guilty on all counts, and sentenced him to 720 months' imprisonment and a life term of supervised release.

## II.

Maati contends that the evidence was insufficient to support his convictions for sexual exploitation of a minor under § 2251(a). The evidence is sufficient if a rational factfinder could conclude that the government established the essential elements of the crime beyond a reasonable doubt. *United States v. Monteer*, 83 F.4th 1119, 1122 (8th Cir. 2023); *see Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

Section 2251(a) makes it unlawful for a person to employ, use, persuade, induce, entice, or coerce "any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct." The phrase "sexually explicit conduct" means a "lascivious exhibition of the anus, genitals, or pubic area" of a minor. *Id.* § 2256(2)(A)(v). An exhibition is "lascivious" within the

meaning of § 2256 only if it is sexual in nature. *United States v. Kemmerling*, 285 F.3d 644, 646 (8th Cir. 2002).

Maati argues that there was insufficient evidence because the district court did not explicitly discuss each of the eight so-called "*Dost* factors"—a list of non-exhaustive criteria first set forth in *United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986), *aff'd sub nom.*, *United States v. Wiegand*, 812 F.2d 1239 (9th Cir. 1987), and later expanded upon in *United States v. Arvin*, 900 F.2d 1385, 1390-92, 1390 n.4 (9th Cir. 1990). We have approved the use of the *Dost* factors in jury instructions and remarked that they "impose useful discipline on the jury's deliberations." *United States v. Ward*, 686 F.3d 879, 882 (8th Cir. 2012) (quoting *United States v. Rivera*, 546 F.3d 245, 253 (2d Cir. 2008)).

We have explained, however, that "[n]ot all of the factors need be present to support a violation of [§ 2251(a)]," *United States v. McCoy*, 108 F.4th 639, 645 (8th Cir. 2024) (en banc), and that "an image may still qualify as a lascivious exhibition of genitals" even if "a majority of the *Dost* factors are absent." *United States v. Lohse*, 797 F.3d 515, 521 (8th Cir. 2015). The district court thus did not err by declining to address explicitly each of the *Dost* factors in explaining its finding of guilt on each count.

We further conclude that the government presented sufficient evidence to support the district court's findings that Maati used or coerced J.R. and E.R. to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct. *See* 18 U.S.C. § 2251(a).

The IMG_3155.mov video was filmed in J.R.'s bedroom, a setting which is sexually suggestive. *See McCoy*, 108 F.4th at 646. As the video continues, Maati directed J.R. to position her naked body in a sexually suggestive position: bent over, with her legs open and her head and both hands on her bed. *See Ward*, 686 F.3d at

883-84. While J.R. was bent over, Maati panned over the child's body then zoomed in the camera in a manner that a reasonable factfinder could conclude was "lewd or lurid." *Kemmerling*, 285 F.3d at 646; *see also United States v. Lemicy*, 122 F.4th 298, 310 (8th Cir. 2024) ("A changing of the camera angle and focusing on the girls' genitals is sufficient for a reasonable juror to find a lascivious exhibition of the minor's public area."). A reasonable factfinder could conclude that the IMG_3155.mov video portrayed J.R. as a sexual object, *see McCoy*, 108 F.4th at 646, and that Maati used J.R. to produce a visual depiction that was sexual in nature and lascivious.

The IMG_3248.mov video was filmed in E.R.'s bedroom, a sexually suggestive setting. *Id*. While filming, Maati zoomed in the camera on E.R.'s penis as he changed his underwear on his bed. A reasonable factfinder could infer that Maati's portrayal of E.R. was sexual in nature. *See Lemicy*, 122 F.4th at 310; *United States v. Johnson*, 639 F.3d 433, 440 (8th Cir. 2011) ("[E]ven images of children acting innocently can be considered lascivious if they are intended to be sexual."). Given the context and zooming of the camera, a reasonable factfinder could conclude that Maati used E.R. to produce a visual depiction that was lascivious.

III.

Maati next challenges the admission of certain evidence at trial. We review evidentiary rulings for abuse of discretion. *United States v. Thurber*, 106 F.4th 814, 830 (8th Cir. 2024). Where Maati did not object, we review only for plain error. *United States v. Cameron*, 99 F.4th 432, 436 (8th Cir. 2024).

A.

Maati first disputes the district court's admission of testimony from Ashley Devereaux, Maati's former stepdaughter. Devereaux, who was thirty-two at the time

of trial, described several instances in which Maati sexually assaulted her when she was five to seven years old. Devereaux also testified that she contracted genital herpes at the time Maati abused her. In addition to this testimony, the government presented certified records of Maati's prior convictions in state court for his abuse of Devereaux. On appeal, Maati argues that Devereaux's testimony was unfairly prejudicial and cumulative, and therefore should have been excluded under Federal Rule of Evidence 403.

Federal Rule of Evidence 414 provides that in a child pornography case, "the court may admit evidence that the defendant committed any other child molestation." Fed. R. Evid. 414(a), (d)(2)(B); *see* 18 U.S.C § 2251. Devereaux's testimony that Maati sexually abused her as a young child is evidence that Maati committed other acts of child molestation, and is probative of his sexual interest in children. *United States v. Schave*, 55 F.4th 671, 677 (8th Cir. 2022). Rule 414(a) permits evidence that shows the defendant's character or propensity to commit certain acts in a child molestation case, so any prejudice to Maati was not "unfair" within the meaning of Rule 403. *United States v. Splettstoeszer*, 956 F.3d 545, 548 (8th Cir. 2020).

That the events about which Devereaux testified occurred more than twenty-five years before trial does not establish unfair prejudice. Congress placed no time limit on the admissibility of evidence under Rule 414, and we have held that evidence pertaining to child molestation that occurred around twenty-five years before trial can be probative and admissible where, as here, it is similar to the charged offense. *See United States v. Emmert*, 825 F.3d 906, 908-09 (8th Cir. 2016). In this case, moreover, the concerns driving the prohibition on unfairly prejudicial or unduly cumulative evidence are diminished, because "we presume that a judge conducting a bench trial will use evidence properly, mitigating any prejudice." *United States v. DNRB, Inc.*, 895 F.3d 1063, 1068 (8th Cir. 2018). We thus conclude that the district court did not abuse its discretion by permitting Devereaux to testify.

B.

Maati next challenges the admission of testimony from Harris, the nurse practitioner who examined J.R. and E.R. Maati asserts that Harris's testimony was unfairly prejudicial because it did not directly relate to any of the charges listed in his indictment.

Harris's recitation of the details that each child shared with her regarding Maati's sexual abuse—including forcing J.R. to perform oral and vaginal sex acts, ejaculating on J.R.'s back, and touching E.R.'s genitals—was relevant. The evidence tended to show that Maati viewed J.R. and E.R. as sexual objects, and that the pornographic videos he produced were intended to elicit a sexual response in the viewer. *See McCoy*, 108 F.4th at 646-47. Evidence that Maati viewed J.R. and E.R. as sexual objects also contradicts his testimony that the videos were created for the purpose of documenting the children's cleanliness. There was no abuse of discretion in admitting this testimony.

Maati did not object to Harris's testimony about testing the children for sexually transmitted diseases. He argues on appeal that the evidence about disease was irrelevant because the children tested negative. It is not obvious that the district court erred by allowing Harris to explain the full scope of her examination, and Maati has not demonstrated that he was prejudiced where there was no evidence that he transmitted an infection to either child. There was no plain error warranting relief.

C.

Maati also objects to the admission of testimony from forensic scientist Brandy Porter. Porter testified that she discovered semen and epithelial cells on each child's bedding, and that DNA analysis strongly supported the conclusion that the semen and epithelial cells came from Maati.

In challenging Porter's testimony, Maati asserts first that the DNA evidence is irrelevant. Evidence that Maati's sperm cells were found on each child's bedding, however, makes it more likely that he committed other acts of child molestation against the children, and is therefore admissible under Rule 414(a). Evidence of Maati's sperm on each child's bedding also has a tendency to contradict his asserted defense that the videos were produced to document the children's hygiene.

Maati next asserts, for the first time on appeal, that the evidence of his DNA on E.R.'s bedding is unreliable because the child's mother collected all pieces of E.R.'s bedding in one plastic bag before giving the evidence to Investigator Pflanz. He suggests that the method of collection created the possibility of cross-contamination between the items in the bag. But whether there was cross-contamination between individual pieces of E.R.'s bedding does not undermine the admissibility of the evidence. The key fact is that Maati's sperm was found on *some piece* of E.R.'s bedding. There was no plain error warranting relief.

D.

Maati disputes the district court's admission of an incomplete written form concerning the warnings prescribed by *Miranda v. Arizona*, 348 U.S. 436 (1966). Maati argued at trial that his statements were inadmissible under *Miranda*. The government introduced the form to support a finding that Maati's waiver of his rights was voluntary, knowing, and intelligent.

When Investigator Pflanz interviewed Maati, he adhered to a written form. The form listed each of the four *Miranda* warnings followed by a question for the interviewee, "Do you understand that?" and a blank space in which to record the interviewee's response. Under each of the four warnings, Pflanz wrote "I do" after Maati provided a verbal response confirming his understanding of the warning.

The final question on the form asked, "Knowing your Rights in this matter, are you willing to answer questions or make a statement to me now?" Investigator Pflanz did not record an answer from Maati in response to that question. At trial, Pflanz testified that after he posed that question, Maati asked "How?" and Pflanz responded, "Well, we can continue to talk about it and go from there."

The interview proceeded, and Maati admitted ownership of the red iPhone, gave Investigator Pflanz the device's password, and signed a consent to search form for the device. Investigators later found the videos depicting J.R. and E.R. on this device.

To determine whether a defendant's waiver of his *Miranda* rights was voluntary, knowing, and intelligent, we consider (1) whether the waiver "was the product of a free and deliberate choice rather than intimidation, coercion, or deception," and (2) whether the waiver was made "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *United States v. Vinton*, 631 F.3d 476, 483 (8th Cir. 2011) (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). This inquiry requires the court to consider the totality of the circumstances. *Id.*

The challenged exhibit bears on whether Maati was aware of the nature of his *Miranda* rights and the consequences of waiving those rights. That he acknowledged understanding each of the four warnings is relevant to the validity of the waiver. Because the form is part of the circumstances surrounding Maati's decision to answer questions, the district court properly considered the document in determining whether Maati's waiver was voluntary, knowing, and intelligent.

IV.

Maati also challenges the reasonableness of his sentence. We review the sentence under a deferential abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 41 (2007). When a sentence is within the advisory guidelines range, we presume that it is reasonable. *United States v. Boyum*, 54 F.4th 1012, 1015 (8th Cir. 2022); *see Rita v. United States*, 551 U.S. 338, 347 (2007).

Maati contends that his 720-month sentence is greater than necessary to achieve the goals of sentencing. He maintains that given his age of fifty-three years at the time of sentencing, the prison term is effectively a life sentence. The district court correctly determined an advisory guideline sentence of life imprisonment. Maati's 720-month sentence falls below or within that range, is presumptively reasonable, and was reasonable in light of his aggravated offense conduct.

\* \* \*

The judgment of the district court is affirmed.

_____